IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RENE MEDINA,

        Plaintiff,                    No. 2:10-cv-0502 LKK AC P

    vs.

KATHLEEN DICKINSON, et al.,

        Defendants.                    <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Plaintiff, a state prisoner proceeding pro se on the basis of a second amended complaint (ECF No. 19) , seeks relief pursuant to 42 U.S.C. § 1983 for alleged constitutional violations related to his placement in administrative segregation ("Ad Seg").  Pending before the court is defendants' motion for summary judgment, re-noticed on June 27, 2012.  <u>See</u> ECF Nos. 51-53, 56.  Plaintiff opposes the motion.  ECF Nos. 54, 58.

        Plaintiff alleges that he was deprived of due process and subjected to cruel and unusual punishment by having been placed in Ad Seg from May 22, 2009 until March 10, 2010, on the basis of a false charge of overfamiliarity with staff.  He contends that his retention in Ad Seg was improper because the original serious rules violation for which he was found guilty was dismissed after he was denied witnesses at the initial rules violation hearing.  He further

1

1  contends that he was denied due process by classification hearings that resulted in decisions to

2  retain him in Ad Seg.  Defendants move for summary judgment on the ground that plaintiff has

3  failed to state a claim for relief and that he is not entitled to judgment as a matter of law.  Motion

4  for Summary Judgment ("MSJ") at 4-13.[1]  In addition, defendants argue that they are entitled to

5  qualified immunity.  Id. at 13-15.

6                    ***Legal Standards Under Rule 56***

7                    Summary judgment is appropriate when it is demonstrated that there exists "no

8  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

9  law." Fed. R. Civ. P. 56(a).

10                    Under summary judgment practice, the moving party always
                      bears the initial responsibility of informing the district court of the basis for its
11                    motion, and identifying those portions of "the pleadings, depositions, answers to
                      interrogatories, and admissions on file, together with the affidavits, if any," which
12                    it believes demonstrate the absence of a genuine issue of material fact.

13  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

14  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

15  judgment motion may properly be made in reliance solely on the 'pleadings, depositions,

16  answers to interrogatories, and admissions on file.'"  Id., at 324.   Indeed, summary judgment

17  should be entered, after adequate time for discovery and upon motion, against a party who fails

18  to make a showing sufficient to establish the existence of an element essential to that party's

19  case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete

20  _____

21              [1]  The motion was originally filed on April 10, 2012, and plaintiff filed his original
        opposition on April 26, 2012.  However, by order filed on May 10, 2012, the court ordered
22      plaintiff to re-serve his discovery requests upon defendants and directed defendants to serve
        responses on an expedited basis.  Defendants' motion for summary judgment was vacated
23      subject to re-notice once defendants had served their discovery responses, after which plaintiff
        was granted thirty days to file his opposition (or supplemental opposition), following which
24      defendants were given seven days to file any reply.  See ECF No. 55.  Thereafter, by order filed
        on July 12, 2012, the court provided plaintiff with supplemental advisement regarding the
25      summary judgment process, pursuant to Woods v. Carey, 684 F.3d 934 (9th Cir. 2012).  Plaintiff
        was also granted an extension of time to file a supplemental opposition.  Briefing was complete
26      on August 16, 2012.  The case was reassigned to the undersigned by order filed on November
        19, 2012.  ECF No. 59.

1  failure of proof concerning an essential element of the nonmoving party's case necessarily

2  renders all other facts immaterial." Id., at 323.   In such a circumstance, summary judgment

3  should be granted, "so long as whatever is before the district court demonstrates that the standard

4  for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

5         If the moving party meets its initial responsibility, the burden then shifts to the

6  opposing party to establish that a genuine issue as to any material fact actually does exist. See

7  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

8  establish the existence of this factual dispute, the opposing party may not rely upon the

9  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

10  form of affidavits, and/or admissible discovery material, in support of its contention that the

11  dispute exists. See Fed. R. Civ. P. 56©; Matsushita, 475 U.S. at 586 n.11.  The opposing party

12  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

13  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

14  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

15  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

16  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

17  1436 (9th Cir. 1987).

18         In the endeavor to establish the existence of a factual dispute, the opposing party

19  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

20  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

21  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

22  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

23  genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

24  committee's note on 1963 amendments).

25         In resolving the summary judgment motion, the court examines the pleadings,

26  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

1  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

2  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

3  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

4  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

5  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

6  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

7  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

8  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

9  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

10 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

11         In applying these rules, district courts must "construe liberally motion papers and

12 pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly."

13 Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

14                         ***Undisputed Facts***

15         The parties do not dispute the pertinent historical facts.  Both plaintiff and

16 defendants rely on the documentation of the disciplinary proceeding from plaintiff's prison

17 central file.  What is really in dispute is the characterization of plaintiff's profession of personal

18 feelings for a staff member as "overfamiliarity;" the propriety of treating such a declaration as a

19 disciplinary offense; and whether plaintiff's removal from general population and retention for

20 nine months in administrative segregation violated his constitutional rights.  The facts are as

21 follows:

22         Plaintiff Rene Medina is a state prisoner serving a life sentence in the custody of

23 the California Department of Corrections and Rehabilitation (CDCR) who was, at the times

24 relevant for this action, housed at the California Medical Facility-Vacaville (CMF).  At the

25 relevant times defendant Clark was a vocational instructor at CMF; defendant Hurtado was a

26 CMF facility captain; defendant Gonzales was an associate warden at CMF; and defendant

4

1  Swarthout was chief deputy warden at CMF.

2          Plaintiff began taking defendant Clark's computer class in April of 2008.  Medina

3  Dep. 9: 8-18, ECF No. 53-2.   On May 22, 2009, plaintiff approached defendant Clark's office,

4  looking flushed.   Second Amended Complaint ("SAC") at 3; CDC 128-B General Chrono dated

5  May 22, 2009 ("5/22/09 Chrono"), ECF No. 19 at 21 (Exhibit to SAC) and ECF No. 52-1

6  (Exhibit to Defendants' Undisputed Facts ("DUF")) at 23.[2]  Defendant Clark asked plaintiff if

7  he was all right.  Medina Dep.15:24-25 -16:1-8; 5/22/09 Chrono.  According to defendant Clark,

8  plaintiff stated that he couldn't even speak, left and then returned a short time later, stating that

9  he had a lot of burdens and that it had been suggested that he speak with a psychiatric

10  professional.  5/22/09 Chrono.  After class was dismissed, plaintiff told defendant Clark he was

11  in love with her.  Plaintiff's Dep. 13:1-5; 19:9-11; 5/22/09 Chrono.  Plaintiff admits that he

12  spoke inappropriately.   SAC at 6; Medina Dep. 19:12-14; 30:19-20; 31:9-11; 36:4-6.

13              Q.  Did you consider what happened between you and Ms. Clark to
                   be a misunderstanding?
14
               A.  No.  I was inappropriate in my speech.
15

16  Plaintiff's Dep. 36:4-6.

17          Defendant Clark told plaintiff he could no longer take part in her class, then asked

18  him to step out of her office and into the hallway.  Plaintiff complied, then asked if his actions

19  would prevent him from participating in graduation and would affect his C-file.  Defendant Clark

20  told him that they absolutely would.  As they continued to walk together to the end of the

21  hallway, plaintiff asked defendant Clark to reconsider her decision.  5/22/09 Chrono.   Plaintiff

22  then returned to his housing unit.  Id.; Medina  Dep. 19:25-20: 1-14.  Defendant Clark

23  documented the incident on a chrono and filed a rules violation report ("RVR") against plaintiff

24  for overfamiliarity.  5/22/09 Chrono; RVR signed 5/26/09, ECF No. 19 at 21-22 and ECF No.

25  _____

26          [2]  When referencing the exhibits to Defendants' Statement of Undisputed Facts, ECF No.
     52-1, page citations are to the attachment's internal pagination.

1  52-1 at 23-24.

2         After plaintiff had returned to his unit, staff arrived and told him that he was

3  being placed in administrative segregation.   Medina Dep. at 22:25-23:11.   At approximately

4  5:30 p.m., Lieutenant Mirich served plaintiff with an administrative segregation placement

5  notice.   Notice dated 5/22/09, ECF No. 52-1 at 11.   The notice stated that plaintiff was being

6  placed on Ad Seg status for telling defendant Clark he was "'completely, totally in love' with

7  her" and that his "presence in the general population at CMF was deemed a threat to the safety

8  and security of the institution and to staff."   The notice also states that plaintiff would remain on

9  Ad Seg status "pending the adjudication of a Rules Violation Report (RVR) for Attempted Over

10  Familiarity with staff and/or ICC/Administrative review for a possible transfer due to staff safety

11  concerns."   Id.

12         On May 26, 2009, plaintiff appeared before the Institutional Classification

13  Committee (ICC) for his initial administrative segregation review before defendants Swarthout,

14  Gonzalez and Hurtado.   SAC at 8, 10; CDC Form 128-G dated 5/26/09, ECF No. 52-1 at 12.

15  Noting the specific reasons for plaintiff's Ad Seg placement, the committee elected to retain

16  plaintiff in Ad Seg pending adjudication of the disciplinary violation.   Plaintiff was granted

17  walk-alone yard and non-contact visitation and the committee stated in its chrono that plaintiff

18  was in agreement with the committee's actions.   Id.

19         On May 28, 2009, defendant Clark submitted another general chrono for

20  plaintiff's file stating that she felt threatened by plaintiff's "actions and statements of

21  overfamiliarity," and requesting that he be retained in Ad Seg and transferred to another

22  institution. SAC, pp. 4-5; Medina Dep. at 33:9 - 34: 23; CDC Form128-B dated 5/28/09, ECF

23  No. 19 at 52 and ECF No. 52-1 at 32.   On June 10, 2009, the Classification Services

24  Representative (CSR) approved a sixty-day extension in plaintiff's Ad Seg placement pending

25  adjudication of the rules violation.   CDC Form 128-G dated 6/10/09, ECF No. 52-1 at 13.   On

26  June 28, 2009, plaintiff filed a grievance claiming that defendant Hurtado had violated his right

6

to due process by failing to interview him before placing him in Ad Seg.  Grievance No. #CMF-M-09-1683, ECF 52-1 at 37.   The appeal was reviewed and partially granted at the second level by defendant Gonzalez, but later denied at the Director's level of review.  ECF No. 52-1 at 38, 44-49.

The hearing on plaintiff's disciplinary violation began on July 1, 2009, but was postponed by the senior hearing officer until July 6, 2009, pending the availability of a witness. ECF No. 52-1 at 24, 26.  On July 6, 2009, plaintiff waived the attendance of various witnesses, including defendant Clark, stipulating to the testimony of the other witnesses.  ECF No. 52-1 at 26.  Plaintiff entered a "not guilty" plea, stating "I wasn't disrespectful or even attempt to become over familiar."  Id.  Plaintiff submitted a written statement to defendant Clark, and a copy of his graduation speech.   ECF No. 52-1 at 25-26; Medina Dep. 36:17-38:4, 25-39:2; 43:12-44:15.  Plaintiff was "found guilty of a Division 'F' offense for violation of CCR Title 15 Section 3005(a);" he was "warned and counseled" with regard to his behavior in the future.  ECF No. 52-1 at 27.

On July 22, 2009, defendant Clark submitted another general chrono after receiving an envelope from plaintiff containing a document entitled, "Mr. Medina's speech for the Graduation Ceremony, May 6, 2009."  CDC Form 128-B dated 7/22/09, ECF No. 52-1 at 33. The document contained a handwritten note that stated, "[i]n essence, this is what I was trying to express. I thought you should know. . .."  Id.  Plaintiff later sent Clark a copy of a grievance against her. Medina Dep. 43:15-44:15.

On August 5, 2009, plaintiff appeared before the ICC for a subsequent Ad Seg review, attended by defendants Swarthout and Hurtado among others.  CDC Form 128-G dated 8/5/09, ECF No. 52-1 at 35.   The committee noted that the disciplinary violation had been adjudicated and that plaintiff had been found guilty of the charge of overfamiliarity.  Id.  It was also noted that plaintiff had not been assessed any credit forfeiture because of due process violations and further that the offense did not warrant a SHU (security housing unit) assessment.

Id.  Nevertheless, the ICC elected to retain plaintiff in Ad Seg based on "staff safety concerns," an apparent reference to the May 28, 2009 chrono in which defendant Clark expressed her feeling of being threatened by plaintiff.  Id.  The ICC recommended plaintiff's adverse transfer, chose to retain plaintiff in Ad Seg pending the transfer and referred the matter to CSR.  Id.  Plaintiff, who "actively participated" in the hearing, "did not agree" with the committee's actions.  Id.

On September 1, 2009, plaintiff appeared at an ICC hearing on his Ad Seg placement and was again retained in Ad Seg based on safety concerns.  CDC Form 128-G dated 9/01/09, ECF No. 52-1 at 14.  It was noted that plaintiff stated his due process rights had been violated at his RVR hearing because he had not been allowed to present evidence at the hearing.  It was further noted that upon transfer plaintiff was eligible for medium-A custody with a work/program group of A2-B.  Id.

On September 11, 2009, the CSR approved plaintiff's transfer to another institution, noting that he was to be transferred by October 3, 2009.  CDC Form 128-G dated 9/11/09, ECF No. 52-3 at 15.  If the transfer did not occur by that date, the case would have to be reviewed to determine whether transfer should be rescinded.  Id.

On September 25, 2009, plaintiff's appeal having been granted in part at the second level, a modification order issued.  A re-hearing of the RVR was ordered because plaintiff's request for witnesses had "not been adequately addressed by the hearing official" at the July 6 hearing.  Modification order dated 9/01/09 but signed 9/25/09, ECF No. 52-1 at 63.

On November 12, 2009, the ICC held another review of plaintiff's Ad Seg placement.  CDC Form128-G dated 11/12/09, ECF No. 52-1 at 16.  The committee noted that plaintiff's transfer had not taken place by the date ordered, but elected to retain plaintiff in Ad Seg on the basis of defendant Clark's May 28, 2009 chrono.  The committee noted its concurrence with Clark's safety concerns and her request for plaintiff's transfer.  It was noted that plaintiff had a pending parole board hearing scheduled for January 2010, but plaintiff stated

8

1  he had postponed the hearing, and had a medical hold and could not be transferred.   Plaintiff

2  also stated his due process rights had been violated at the RVR hearing due to his evidence

3  having not been allowed at the hearing.  Id.

4      Plaintiff's re-hearing on the charge of overfamiliarity occurred on December 10,

5  2009.  ECF No. 52-1 at 48-61.  Plaintiff was allowed a number of witnesses.  Id. at 50-55, 57-61.

6  Plaintiff was again found guilty of the act of overfamiliarity.  Id. at 56.  Plaintiff was warned and

7  counseled as to his future behavior, referred to be unassigned from any work/school position, but

8  assessed no time credit forfeiture because the hearing was untimely.  Id. at 56.   Also on

9  December 10, 2009, the CSR approved extending plaintiff's retention in Ad Seg pending his

10  rescheduled parole board hearing.  CDC Form128-G dated 12/10/09, ECF No. 52-1 at 18.

11      On February 11, 2010, the CSR endorsed plaintiff for transfer to California State

12  Prison-Corcoran (CSP-Corcoran).  CDC Form 128-G dated 2/11/10, ECF No. 52-1 at 21.

13  Plaintiff was transferred from CMF to CSP-Corcoran on March 10, 2010.  ECF No. 52-1 at 7

14  (plaintiff's movement history).  Noted in the "Board of Prison Terms Life Prisoner: Progress

15  Report" for subsequent parole consideration, under the heading "prison behavior" for year

16  9/17/2008 to 8/17/2009, is: "Subject sent harassing correspondence to a staff member.

17  05/22/2009 115 3005(a) Overfamiliarity Guilty (Serious) - Division F."  BPT Progress Report,

18  ECF No. 19 at 54 (Exhibit to SAC).  It is also noted that plaintiff was housed in the CMF ASU

19  until 3/10/10 when he was transferred to Corcoran III and then transferred on 4/27/10 to Solano

20  II.  Id.

21              ***Eighth Amendment Claims***

22              <u>Cruel & Unusual Punishment</u>

23      The Eighth Amendment proscribes punishment which involves "the unnecessary

24  and wanton infliction of pain."  <u>Rhodes v. Chapman</u>, 452 U.S. 337, 246 (1981).  Because

25  routine discomfort is part of the penalty that criminal offenders pay for their offenses against

26  society, only those deprivations denying "the minimal civilized measure of life's necessities" are

1   sufficiently grave to violate the Eighth Amendment.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

2               [A] prison official cannot be found liable under the Eighth
3               Amendment for denying an inmate humane conditions of
confinement unless the official knows of and disregards an
excessive risk to inmate health or safety; the official must both be
4               aware of facts from which the inference could be drawn that a
substantial risk of serious harm exists, and he must also draw the
5               inference.

6   Farmer v. Brennan, 511 U.S. 825, 837 (1994).

7               Analysis

8               Plaintiff contends that the 292 days he spent in Ad Seg constituted cruel and

9   unusual punishment.  The defendants are correct that plaintiff does not set forth facts that show

10  that the defendants knowingly disregarded a substantial risk of harm to plaintiff's health or

11  safety.  MSJ at 6-7.  In the Second Amended Complaint, plaintiff claims to have been deprived

12  of "visits, appliances, his right to graduate and the imposition of being handcuffed every day in

13  confinement."  SAC at 16.  However, none of these deprivations amount to the infliction of cruel

14  and unusual punishment.  See, e.g., Dunn v. Castro, 621 F.3d 1196, 1202-03 (9th Cir. 2010):

15               We have similarly declined to recognize a prisoner's constitutional
right to receive visits, stating that "it is well-settled that prisoners
16               have no constitutional right while incarcerated to contact visits.'
Gerber v. Hickman, 291 F.3d 617, 621 (9th Cir.2002) (en banc);
17               see also Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir.1996)
(affirming dismissal of prisoner's claim challenging regulation that
18               denied him visits from persons other than his immediate family);
Barnett v. Centoni, 31 F.3d 813, 817 (9th Cir.1994) (per curiam)
19               (holding that prisoners do not have a constitutional right to contact
visitation privileges); Toussaint v. McCarthy, 801 F.2d 1080, 1114
20               (9th Cir.1986) ('To the extent that denial of contact visitation is
restrictive and even harsh, it is part of the penalty that criminals
21               pay for their offenses against society.'), abrogated in part on other
grounds by Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132
22               L.Ed.2d 418 (1995).

23  It is undisputed that plaintiff was granted walk-alone yard and non-contact visitation.   Plaintiff

24  does not allege, however, that he was denied outdoor exercise for an extended period during his

25

26

10

1   Ad Seg placement.[3]

2          Nor has plaintiff alleged a combination of conditions which collectively deprived

3   him of a single identifiable human need.

> *Some* conditions of confinement may establish an Eighth
> Amendment violation "in combination" when each would not do
> so alone, but only when they have a mutually enforcing effect that
> produces the deprivation of a single, identifiable human need such
> as food, warmth, or exercise-for example, a low cell temperature at
> night combined with a failure to issue blankets. Compare <u>Spain v.
> Procunier</u>, 600 F.2d 189, 199 (9th Cir. 1979) (outdoor exercise
> required when prisoners otherwise confined in small cells almost
> 24 hours per day), with <u>Clay v. Miller</u>, 626 F.2d 345, 347 (4th Cir.
> 1980) (outdoor exercise not required when prisoners otherwise had
> access to dayroom 18 hours per day).  To say that some prison
> conditions may interact in this fashion is a far cry from saying that
> all prison conditions are a seamless web for Eighth Amendment
> purposes.  Nothing so amorphous as "overall conditions" can rise
> to the level of cruel and unusual punishment when no specific
> deprivation of a single human need exists.

13  <u>Wilson v. Seiter</u>, 501 U.S. 294, 304-05 (1991).  The conditions to which plaintiff claims to have

14  been subjected in Ad Seg do not provide the factual predicate for an Eighth Amendment

15  violation.  Nor does the allegation that defendant Clark was "deliberately and willfully"

16  indifferent in denying him his "earned right" to graduate with his Microsoft Specialist

17  Certification, SAC at 5, implicate a basic human need or constitutional right.

18                  <u>Inadequate Medical Care</u>

19          In order to state a § 1983 claim for violation of the Eighth Amendment based on

20  inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

21  deliberate indifference to serious medical needs."  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).

22  To prevail, plaintiff must show both that his medical needs were objectively serious, and that

23  defendants possessed a sufficiently culpable state of mind.  <u>Wilson</u>, 501 U.S. at 299; <u>McKinney</u>

24  <u>v. Anderson</u>, 959 F.2d 853 (9th Cir. 1992).  The requisite state of mind for a medical claim is

25

26          [3]  <u>See</u>, <u>e.g.</u>, <u>LeMaire v. Maass</u>, 12 F.3d 1444, 1457 (9th Cir. 1993) (as amended) (exercise
    is "one of the basic human necessities protected by the Eighth Amendment.").

1   "deliberate indifference."  Hudson, 503 U.S. at 5.

2         A serious medical need exists if the failure to treat a prisoner's condition could

3   result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

4   that a prisoner has a serious need for medical treatment include the existence of an injury that a

5   reasonable doctor or patient would find important and worthy of comment or treatment; the

6   presence of a medical condition that significantly affects an individual's daily activities; or the

7   existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900 F. 2d 1332,

8   1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir.

9   1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds,

10  WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

11        In Farmer v. Brennan, supra, the Supreme Court  defined a very strict standard for

12  "deliberate indifference."  Negligence is insufficient.  Farmer, 511 U.S. at 835.  Even civil

13  recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious

14  that it should be known) is insufficient.  Id. at 836-37.  Neither is it sufficient that a reasonable

15  person would have known of the risk or that a particular defendant should have known of the

16  risk.  Id. at 842.  Deliberate indifference is established only where the defendant subjectively

17  "knows of and disregards an excessive risk to inmate health and safety."  Toguchi v. Chung, 391

18  F.3d 1051, 1057 (9th Cir. 2004) (internal citation omitted).

19        Analysis

20        Plaintiff contends that defendant Clark deprived him of his right to adequate

21  medical care when she did not ensure that he received treatment for his medical condition on the

22  date of the incident which led to her charge of overfamiliarity.  In her May 22, 2009 General

23  Chrono, defendant Clark reported in relevant part:

24          On May 22, 2009, at approximately 1515, Medina approached my
            office doorway, he looked flush.  I asked him if he was alright.  He

25          stated he couldn't even talk.  I asked him if I needed to call B-1.
            He stated no and he would be OK in a minute.  He left my

26          doorway.  He returned and stated he had a lot of burdens and that it

had been suggested to him that he see a Psych.  I stated that would
be a good idea to talk to someone.  I again asked him if he was
alright and if I needed to call B-1 or a Psych for him especially
since it would be a three day weekend.  He stated he had written
something and would I look at it.  I told him I needed him to
answer if he need [sic] to go to B-1 or see a Psych.  He said no. . . .

. . . Medina returned after all the students were gone and asked if
he could talk to me.  He stated that he had difficulty speaking, but
he had to tell me.  He stated he was completely, totally, in love
with me.  He said he has been for a long time.  He stated this is
why he has had difficulty with anxiety and that it was affecting his
health.  He stated that this is why, in the past, he has had to go to
B-1. . . .

SAC, ECF No. 19 at 21; DUF, ECF 52-1 at 23.

Plaintiff contends that defendant Clark should have referred him for a psychiatric

evaluation for his "clear medical need."  SAC at 3-4.   However, plaintiff does not dispute that

he told Clark at the time of the incident that he did not need to go to the clinic.  Plaintiff's own

exhibits document that when he was psychiatrically screened for Ad Seg placement later the

same day, he expressly denied any need for medical or psychological treatment.  Progress Note

dated 5/22/09 re ASU Clearance, SAC at 56 ("I/P admits that he is currently upset about the

current situation + that he sometimes struggles with depression; however, he states that he does

not want treatment or meds.")  Plaintiff neither produces nor proffers any evidence that would

raise a dispute regarding these facts.  Accordingly, even if plaintiff had been in serious medical

need despite his protestations to the contrary (a contention for which there no evidence), he

cannot establish that Clark subjectively knew of and deliberately disregarded that need.

Plaintiff points to evidence that Clark was aware he had an underlying medical

condition.  At the second RVR hearing, plaintiff asked Clark the following questions through an

investigative employee:

1.  Q.  J. Clark, before the occurrence on 5/22/09, were you aware
of my medical problems; sleep disorder, frequent chest pains,
shortness of breath and consequently my state of depression?

A.  Yes I was aware.

1       2.  Q.  Did you not in fact call the Mental Health Department on
        several occasions from our class office, speaking to P. Reyes,
2       Social Worker, and Dr. Bruce, Psychologist, upon my request?

3       A.  No.

4   SAC, ECF No. 19 at 23; DUF, ECF No. 52-1 at 50.

5       The statement of Social Worker Reyes, however, appears to contradict

6   Clark's representation that she had never called Reyes on plaintiff's behalf:

7       2.  Q.  It is not [sic] in fact true you received a phone call from the
        Education Dept. from Vocational Instructor J. Clark, informing
8       you that one of her students, Mr. Medina, wanted to speak to you
        regarding medical problems causing him difficulty coping with
9       depression.

10      A.  Yes.

11  SAC, ECF No. 19 at 25; DUF, ECF No. 52-1 at 52.

12      This contradictory testimony fails to create a triable issue of fact regarding

13  Clark's state of mind on May 22, 2009.  Even if Clark misremembered a prior communication

14  with Reyes regarding plaintiff, and even if she had previously brought plaintiff's medical or

15  psychological condition to the attention of medical and/or psychological staff, that would be

16  insufficient without more to establish her awareness of a serious medical need on the date of the

17  incident.  In his deposition plaintiff did not recall whether or not he told Clark he was having

18  chest pains, or whether he asked for medical attention when he was in the holding area post-

19  incident.  Medina Dep. 24:18-25:3.  As noted above, records that plaintiff does not dispute

20  document that he told clinic staff he was not in medical need.  The May 22, 2009 placement

21  notice specifies that plaintiff had been "medically and psychiatrically cleared" prior to his Ad

22  Seg placement on the date of the incident.  DUF, ECF No. 52-1 at 11.

23      Plaintiff has neither pled facts nor proffered evidence indicating that he was

24  experiencing a serious medical need on May 22, 2009, or that Clark acted with the state of mind

25  necessary to support a deliberate indifference claim.  Accordingly, she is entitled to judgment in

26  her favor as a matter of law.

1        *Fourteenth Amendment Due Process Claims*

2        Plaintiff alleges that his due process rights were violated in various ways by the

3  disciplinary proceedings against him, his placement in Ad Seg, his continued segregation and

4  eventual transfer to another institution.  The Due Process Clause itself does not grant prisoners a

5  protected liberty interest in remaining in general population, <u>Sandin v. Conner</u> 515 U.S. 472,

6  485-86 (1995); not losing privileges, <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 323 (1976); or

7  remaining at a particular institution, <u>Meachum v. Fano</u>, 427 U.S. 215 (1976).  State law may

8  create liberty interests protected by the Fourteenth Amendment, but only when the deprivation in

9  question (1) restrains the inmate's freedom in a manner not expected from his or her sentence

10 and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary

11 incidents of prison life."  <u>Sandin</u>, 515 U.S. at 483-84.

12       Plaintiff has neither pleaded nor proffered facts which would constitute atypical

13 and significant hardships within the meaning of <u>Sandin</u>.  He complains about loss of visiting

14 privileges and removal from educational and vocational programs, but these standard conditions

15 of administrative segregation are not atypical and significant hardships when compared to the

16 burdens of ordinary prison life.  <u>See</u> <u>Serrano v. Francis</u>, 345 F.3d 1071, 1078 (9th Cir. 2003); <u>see</u>

17 <u>also</u> <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir. 1997).  Accordingly, there is no basis for this

18 court to interfere in defendants' implementation of "policies and practices that in their judgment

19 are needed to preserve internal order and discipline and to maintain institutional security."  <u>Bell</u>

20 <u>v. Wolfish</u>, 441 U.S. 520, 547 (1979).  Deference to such decisions is the general rule, applicable

21 here.  <u>Id.</u>

22       Defendants are correct that these principles entitle them to judgment as a matter

23 of law.  The undersigned will nonetheless addresses the specific contentions of the complaint

24 that are presented in the due process context.

25       <u>False Accusation</u>

26       Plaintiff alleges that defendant Clark deprived him of due process by making a

15

1    "false" report, and that all defendants deprived him of due process by administratively

2    segregating him on the basis of a false accusation.  Plaintiff does not dispute that he told Clark

3    that he loved her, but appears to argue both that his conduct did not constitute "overfamiliarity,"

4    and that "overfamiliarity" is not prohibited by 15 Cal. Code Regs. § 3005(a).  That regulation,

5    which was cited as the basis for plaintiff's serious rules violation, requires inmates to "obey all

6    laws, regulations, and local procedures," and prohibits any "behavior which might lead to

7    violence or disorder, or otherwise endangers facility, outside community or another person."  §

8    3005(a).  Plaintiff contends in essence that his actions toward Clark did not actually endanger her

9    safety or institutional security, and therefore could not justify his placement and retention in Ad

10   Seg.

11          In support of his argument that Clark did not perceive an immediate threat to her

12   physical safety when he told her that he loved her, plaintiff points to the following testimony

13   from his disciplinary hearing:

14          3.  Q.  All state employees are issued an alarm to ensure their
           safety, security and well-being.  If an individual were to pose a
15          threat to your safety, security, and well being, would you activate
           your personal alarm?

16          [Clark].  Yes.

17          4.  Q.  On May 22, 2009 the day of your report, did you activate your alarm?

18          [Clark].  No.

19

20   SAC, ECF No. 19 at 23; DUF, ECF No. 52-1 at 50.

21          Whether or not Clark believed herself to be in imminent physical danger during

22   the incident, it is undisputed that she reported feeling threatened by plaintiff's profession of love

23   for her and by his subsequent attempts to contact her.  Plaintiff contends that he did not send

24   Clark letters after the incident, as she testified that he did.  SAC at 6-7.  He acknowledges,

25   however, that he sent Clark a copy of a speech he had written about her and a copy of a

26   complaint he filed against her.  Medina Dep. 36:17-38:4, 25-39:2, 43:12-44:15.  Whether those

16

1  communications were "letters" is immaterial.  It also does not matter whether the speech he sent

2  was threatening or, as plaintiff argues, merely explanatory.  The undisputed facts are that

3  plaintiff sent written materials to Clark at least twice following the May 22, 2009 incident, and

4  that she reported feeling threatened by his attempts to contact her.[4]  Clark reaffirmed in

5  November 2009 that she continued to have "personal safety concerns" about the prospect of

6  plaintiff being housed in the CMF Department of Mental Health Program.  CDC Form 28-G

7  dated 11/17/09, SAC at 53.

8          Plaintiff does not dispute that Clark expressed repeated concern for her safety, he

9  disputes the validity of that concern.  Plaintiff points to the testimony of social worker Reyes that

10  Reyes did not consider plaintiff a threat to staff.  DUP, ECF No. 52-1 at 52.  Plaintiff cannot

11  defeat summary judgment by raising a factual dispute about his actual dangerousness, however.

12  It is not this court's role to revisit the question whether plaintiff's conduct toward Clark

13  constituted a genuine security threat.  Courts must accord wide-ranging deference to prison

14  administrators in their efforts to preserve internal order and discipline and to maintain

15  institutional security.  Bell, 441 U.S. at 547.

16          "[T]he due process clause requires only the existence of 'some evidence' in

17  support of [a] prison administrator's segregation decision."  Toussaint v. McCarthy, 801 F.2d

18  1080, 1104 (9th Cir. 1986) (citing Superintendent v. Hill, 472 U.S. 445 (1985)), cert. denied, 481

19  U.S. 1069 (1987).  Assuming that this standard applies even where no good time credits have

20  been forfeited,[5] Clark's statements undeniably constitute "some evidence" that plaintiff posed a

21  threat to her or, in the language of the applicable prison regulation, that his conduct might "lead

22

23          [4]  Additionally, a library tech assistant reported on July 23, 2009, that plaintiff had tried
    to "use her to get a message to J. Clark."  DUF, Ex. A, p. 34 (general chrono dated 7/23/09).

24

25          [5]  The "some evidence" standard announced in Hill is constitutionally required in order to
    protect the liberty interest that prisoners have in good time credits that may affect the duration of
    their custody.  Hill, supra, 472 U.S. at 456.  Plaintiff did not forfeit any credits as the result of
26  this incident.

1  to . . . disorder." 15 Cal. Code Regs. § 3005(a).  Accordingly, as a matter of law, plaintiff cannot

2  establish a due process violation or defeat summary judgment with evidence that Clark

3  overreacted to his expression of emotion and subsequent attempts to contact her.[6]

4          Even a fabricated or unfounded charge of misconduct does not constitute a per se

5  due process violation.  See Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986).  A false

6  disciplinary charge against a prisoner implicates constitutionally protected rights only when it is

7  unsupported by any evidence or where it is retaliatory; otherwise custody and classification

8  decisions are entitled to deference because they serve the legitimate penological purpose of

9  maintaining prison discipline.  See Barnett v. Centoni, 31 F.3d 813, 815-816 (9th Cir. 1995);

10  Hines v. Gomez, 108 F.3d 265 (9th Cir. 1997).  The due process rights that apply in such cases,

11  including this one, are procedural only.  See Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th

12  Cir.1984) (allegation that prison guard planted false evidence in retaliation for prisoner's failure

13  to pay extortion demand fails to state section 1983 claim so long as procedural due process was

14  provided).

15          Ad Seg Placement

16          For placement in administrative segregation, an inmate must receive some notice

17  of the factual basis for confinement and an opportunity to be heard within a reasonable time.

18  Hewitt v. Helms, 459 U.S. 460, 476 (1983); Toussaint, 801 F.2d at 1100 & n. 20.  It is

19  undisputed that plaintiff was provided written notice on May 22, 2009, that he was being placed

20  on "Ad Seg status pending the adjudication of an RVR for attempted over familiarity with staff"

21  and/or review "for a possible transfer" for telling defendant Clark he was "'completely, totally in

22  love' with her" and that his "presence in the general population at CMF was deemed a threat to

23

24          [6]  For this reason, the court will deny plaintiff's request that it take judicial notice of
   another case in which Clark was alleged to have falsely charged an inmate with overfamiliarity.
25  Such allegations are not relevant to the matters before this court.  Nothing in the record of
   Neighbors v. Clark, 2:01-cv-0596 LKK JFM P, creates a triable issue of fact in this case.  The
26  undersigned does note that summary judgment was entered for defendant Clark in the Neighbors
   case.

1   the safety and security of the institution and to staff."   ECF No. 52-1 at 11.   Placement in Ad

2   Seg pending a disciplinary hearing, with notice of the charges, does not violate due process.   See

3   May, 109 F.3d at 565.   Plaintiff complains that on the day of the incident, Clark failed to permit

4   him to speak with the principal or to assigned Education Officer Ross.   SAC at 3.   Due process

5   does not guarantee those procedures.

6           Plaintiff contends that defendants Swarthout, Gonzalez and Hurtado violated his

7   right to due process by continuing his Ad Seg status following his appearance before their

8   committee on May 26, 2009, prior to defendant Clark's documentation on May 28, 2009 that she

9   did not want him returned to general population.   The record before the ICC on May 26 was

10  sufficient to support its decision.   Plaintiff was placed in Ad Seg because of the facts that Clark

11  initially reported, not because of her subsequently expressed opinion about his classification.

12          Plaintiff argues that his placement in Ad Seg deprived him of due process because

13  it cost him his vocational job.   Prisoners do not have a constitutional right to a job.   Baumann v.

14  Arizona Dept. of Corrections, 754 F.2d 841, 846 (9th Cir. 1985) ("[g]eneral limitation of jobs and

15  educational opportunities is not considered punishment").

16          In sum, because plaintiff has no due process right to be free of administrative

17  segregation, Sandin, 515 U.S. at 486, and because he was provided notice of the basis for his

18  initial removal from general population, Hewitt, 459 U.S. at 476, his placement in Ad Seg did

19  not violate the Fourteenth Amendment.   See May, 109 F.3d at 565 (segregation pending

20  disciplinary hearing does not implicate due process); Toussaint, 801 F.2d at 1091-92.

21          Ad Seg Retention

22          Plaintiff contends that his retention in Ad Seg for nine months violated due

23  process in several ways.   As previously stated, nothing in the conditions of plaintiff's segregation

24  was inherently unconstitutional.   Hewitt, 459 U.S. 467 n. 4 (even "severe hardships" imposed by

25  segregation, such as "denial of access to vocational, educational, recreational, and rehabilitative

26  programs, restrictions on exercise, and confinement to [one's] cell for lengthy periods of time,"

1   do not give rise to a protected liberty interest); see also Resnick v. Hayes, 213 F.3d 443, 447-48

2   (9th Cir.2000) (dismissing due process claim where the plaintiff failed to allege any material

3   difference between the conditions in administrative segregation and the conditions in the general

4   population).

5          The periodic review of plaintiff's custody status satisfied constitutional

6   requirements.  In Toussaint v. McCarthy, supra, the Ninth Circuit held that review of

7   administrative segregation every 120 days satisfies due process.  Toussaint, 926 F.2d at 803.  In

8   this case, the longest time between reviews by the classification committee was a period of 69

9   days (from May 26, 2009 to August 5, 2009).  Accordingly, plaintiff cannot prevail on a theory

10  that he received inadequate review of his status.

11         Plaintiff argues more specifically that due process was violated by his continued

12  retention in Ad Seg after prison officials recognized that he had been deprived of the opportunity

13  to call witnesses at his first RVR hearing.  That procedural error resulted in a second hearing, at

14  which plaintiff's evidence was presented and considered.  The underlying charge of

15  overfamiliarity was not "dismissed," as plaintiff suggests.  Because of the initial error and the

16  untimeliness of the second hearing, plaintiff lost no good time credits as the result of the adverse

17  disciplinary finding.  The fact that plaintiff suffered no loss of good time credits indicates that no

18  protected liberty interest was infringed by his retention in Ad Seg.  See Hill, 472 U.S. at 447.

19         Plaintiff's due process theory fails as a matter of law.  See Bostic v. Carlson, 884

20  F.2d 1267, 1270 (9th Cir.1989) (explaining that a failure by prison to meet its own guidelines

21  regarding hearing deadlines does not constitute denial of due process).  Plaintiff's confinement in

22  Ad Seg was supported by at least "some evidence" that he posed a threat to staff or to

23  institutional order.  See Hill, 472 U.S. at 447.  Because the underlying finding of misconduct was

24  sustained after consideration of plaintiff's evidence, and because prison officials have broad

25  authority to segregate inmates they deem a threat to institutional security, Bell, 441 U.S. at 547,

26  defendants are entitled to judgment in their favor.

1        Defective Appeal Process

2        Plaintiff raises various complaints about the appeals process.  Prisoners have no

3   constitutional entitlement to a specific prison grievance procedure.  Ramirez v. Galaza, 334 F.3d

4   850, 860 (9th Cir. 2003).  Even the non-existence of, or the failure of prison officials to properly

5   implement, an administrative appeals process within the prison system does not raise

6   constitutional concerns.  Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also, Buckley v.

7   Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d 728 (8th Cir. 1991); Azeez v.

8   DeRobertis, 568 F. Supp. 8, 10 (N.D.Ill. 1982) ("[A prison] grievance procedure is a procedural

9   right only, it does not confer any substantive right upon the inmates.  Hence, it does not give rise

10  to a protected liberty interest requiring the procedural protections envisioned by the fourteenth

11  amendment").  The failure to properly process a grievance therefore does not constitute a

12  constitutional violation.  Buckley, supra.  Defendants' motion for summary judgment on this

13  ground should be granted.

14        Transfer

15        Finally, plaintiff identifies no disputed issue of material fact supporting the

16  allegation that his transfer to a prison at a different custody level was unconstitutional.  See Pratt

17  v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (prisoners generally have no constitutionally

18  protected liberty interest in being held at, or remaining at, a given facility) (citing e.g., Meachum

19  v. Fano, 427 U.S. 215 (9176)).  Prison authorities may change a prisoner's place of confinement

20  without violating due process, "even though the degree of confinement may be different and

21  prison life may be more disagreeable in one institution than in another."  Rizzo v. Dawson, 778

22  F.2d 527, 530 (9th Cir.1985).  Defendants are entitled to judgment as a matter of law on this

23  issue.

24        ***Qualified Immunity***

25        Because plaintiff has not raised a genuine issue of material fact in support of any

26  finding that his constitutional rights were violated by defendants, the court need not reach

21

1    defendants' argument that they are entitled to qualified immunity.

2            Accordingly, IT IS RECOMMENDED that defendants' motion for summary

3    judgment (ECF No. 56) be granted and judgment be entered for defendants.

4            These findings and recommendations are submitted to the United States District

5    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

6    eight days after being served with these findings and recommendations, any party may file

7    written objections with the court and serve a copy on all parties.  Such a document should be

8    captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the

9    objections shall be served and filed within fourteen days after service of the objections.  The

10    parties are advised that failure to file objections within the specified time may waive the right to

11    appeal the District Courts order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

12    DATED: January 23, 2013.

13

14

15                      ALLISON CLAIRE
                      UNITED STATES MAGISTRATE JUDGE

16

17    AC:009
     medi0502.msj.AC

18

19

20

21

22

23

24

25

26